IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ANTHONY WILLIAMS,

       Plaintiff,

v.                                   CIVIL ACTION NO. 1:12cv174
                                   (Judge Keeley)

TERRY O'BRIEN, WARDEN,
ODOM, Associate Warden,
B. GILMORE, Captain,
D. HUFF, Lieutenant,
SPOLAN, Lieutenant,
DR. FANNING,
GREGORY MIMS, Clinical Director,
CHRISTOPHER MYER, P.A.,
DEVIN KRAMER, R.N.,
WILSON, Unit Counselor,
DIXON, Case Manager,
LeMASTER, Unit A-1 Manager,
NEWSOME, Correctional Officer,
J. SAUNDERS, Correctional Officer,
J. TAROVISKY, Correctional Officer,
JOHN DOES, several unknown staff members,

       Defendants,

## REPORT AND RECOMMENDATION

### I.  Procedural History

      The *pro se* plaintiff, Anthony Williams,  initiated this case on November 6, 2012,  by filing a

civil rights complaint against the above-named defendants pursuant to <u>Bivens v. Six Unknown Named</u>

<u>Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court

created a counterpart to 42 U.S.C. §1983 and  authorized suits against federal employees in their

individual capacities.  On December 7, 2012, the plaintiff filed his complaint on the court-approved

form. On January 24, 2013, the Court received the plaintiff's Prisoner Trust Account Report, and on January 25, 2013, the plaintiff was granted leave to proceed *in forma pauperis*. Although the plaintiff was ordered to pay an initial partial filing fee of $5.34, within twenty-eight days, the fee was not received until September 30, 2013. Despite this fact, the undersigned conducted a preliminary review on July 25, 2013, determined that summary dismissal was not warranted, and ordered that summonses be issued. Summonses were issued that same day.

On November 27, 2013, the defendants filed a Motion to Dismiss or for Summary Judgment. On December 2, 2013, the plaintiff was issued a Roseboro Notice. To date, more than five months later, he has made no response. Accordingly, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss or for Summary Judgment.

## II. **The Complaint**

In his complaint, the plaintiff makes multiple allegations against seventeen defendants. Sixteen of the defendants are named by at least their last name, and the plaintiff also includes as a defendant, "John Does," who he denotes as several unknown staff members. The plaintiff's complaint concerns events which occurred at USP Hazelton, and appear to relate primarily to the time period from July 12, 2012 through December 10, 2012, while he was confined to the Special Housing Unit ("SHU").The plaintiff set forth seven claims[1] in his complaint: (1) he was denied access to the SHU law library; (2) he was denied administrative grievance forms; (3) medical personnel within the prison were deliberately indifferent to his medical needs; (4) he was subjected to racially derogatory comments and a false incident report; (5) he was subjected to sexual harassment when personnel made sexual and derogatory

---

[1]The plaintiff actually lists eight claims. However the claims he numbers as one and two both relate to his being denied administrative grievance forms.

comments to him; (6) he was subjected to inhumane living conditions; and (7) he was denied recreation while USP Hazelton was on lock down from August 29, 2012, through October 1, 2012.

### III.  Defendants' Motion to Dismiss or for Summary Judgment

In support of their motion, the defendants allege that:

(1) The plaintiff's complaint must be dismissed for failure to exhaust his administrative remedies;

(2) The plaintiff's allegations regarding staff refusal to provide him grievance forms do not rise to the level of a constitutional violation and must be dismissed;

(3) The plaintiff allegations that staff refused him use of the law library does not rise to the level of a constitutional violation and must be dismissed;

(4) The plaintiff's allegations regarding his conditions of confinement must be dismissed because they fail to allege any constitutional violation;

(5) The plaintiff's claims regarding racial discrimination and false incident reports must be dismissed because they fail to state a constitutional violation;

(6) The plaintiff's claims regarding medical treatment as they relate to Christopher Meyer, Devin Kramer, and Dr. Gregory Mims must be dismissed because they were each a public health service employee during the time frame alleged and are, therefore, entitled to absolute immunity;

(7) The plaintiff's allegation that the defendants were deliberately indifferent to his serious medical need by discontinuing his medication for depression must be dismissed;

(8) Lt. John Squires must be dismissed from this lawsuit due to lack of personal involvement;

(9) The plaintiff's claims against all the defendants should be dismissed because they are entitled

to qualified immunity; and

(10) the plaintiff's claims against the defendants in their official capacities must fail.

## IV. <u>Standard of Review</u>

### A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir.1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' " <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level," <u>id</u>. (citations omitted), to one that is "plausible on its face," <u>id</u>. at 570, rather than merely "conceivable." <u>Id</u>. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I.DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir.2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir.2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id</u>.

## B. <u>Summary Judgment</u>

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. liberty lobby, Inc.</u>, 477 U.S. 242, 248 *1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of

informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

**V.  Analysis**

**A.  Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is

mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). A <u>Bivens</u> action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available. <u>Booth</u> at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. <u>See</u> <u>Porter</u>, 534 U.S. at 524 (citing <u>Booth</u>, 532 U.S. at 741) (emphasis added).[3]

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels.

---

[2] <u>Id.</u>

[3] In <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." <u>Woodford</u> at 93-94 (emphasis added).

28 C.F.R.§ 542.10-542.15; <u>Gibbs v. Bureau of Prison Office, FCI</u>, 986 F.Supp. 941, 943 (D.Md. 1997).

Several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. <u>See</u> <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3rd Cir. 2003)(summary dismissal for failure to exhaust not appropriate where prisoner denied forms necessary to complete administrative exhaustion); <u>Ziemba v. Wezner</u>, 366 F.3d 161 (2nd Cir. 2004)(defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); <u>Aceves v. Swanson</u>, 75 Fed. Appx. 295, 296 (5th Cir. 2003)(remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); <u>Dotson v. Allen</u>, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006)(dismissal for failure to exhaust not appropriate where plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

In this particular case, there appears to be no dispute that the plaintiff has not exhausted his administrative remedies. In fact, the uncontroverted evidence establishes that the plaintiff did not file any administrative grievances between his arrival at USP Hazelton on November 21, 2012, and when he filed his complaint on November 16, 2012. (Doc. 97-1, p. 2). The plaintiff contends that the defendants failed to provide him with the forms to exhaust his remedies. In particular, the plaintiff alleges that while he was in the SHU from July 12, 2012, until December 4, 2012, when he

prepared his complaint, his unit team members made their rounds, and he specifically told defendant Wilson that he needed a BP-8 grievance form. He further alleges that defendant Wilson demanded to know why he wanted the form, and he told her it was to "write up Lt. D. Huff, Lt. Spoken, Warden O'Brien, A.W. Odom and Capt. B. Gilmore for depriving [him] of [his] right to the courts." (Doc. 8-1, p. 2). The plaintiff alleges that in response, defendant Wilson told him he was crazy if he thought she was going to give him anything to write up the warden, and that he should forget about writing up the warden unless he wanted to find himself being shipped all around the BOP. The plaintiff then continues by noting that defendant Wilson told him she did not have any forms with her, but would bring them the next day. The plaintiff alleges that she did not. The plaintiff also alleges that he requested forms from case manager Dixon, who also told him he did not have any forms with him, and even if he did, he would not give him anything that would have an effect on his colleagues. Finally, the plaintiff alleges that he asked his unit manager Lemaster to please provide him with a BP-8. The plaintiff alleges that defendant Lemaster told him that he and all the staff had caught wind of what he was trying to do, and that he (Lemaster) was not going to participate in his "childish and foolishness." (Doc. 8-1, p. 4).

Attached to the defendants' Motion to Dismiss or for Summary Judgment is the sworn Declaration of Melissa Wilson, who was the plaintiff's correctional counselor during the period in question. In her Declaration, Ms. Williams notes that she visited the SHU, at a minimum, on a weekly basis, and that while making rounds in the SHU, she had a mobile cart which held administrative remedy forms and other forms that inmates in the SHU generally need. Ms. Wilson maintains that she recalls the plaintiff asking for administrative remedy forms while in the SHU, and she provided those forms to

him. She also distinctly remembers that he sent her a "cop out" asking for additional form, and she then asked him what his concerns were. He told her that he had completed his disciplinary segregation in the SHU and should be released back onto the compound. She informed him that the orders were in the process of being signed, and he was satisfied with this response. Ms. Williams completes her Declaration by denying that she never discouraged the plaintiff from filing administrative remedies and did not withhold administrative remedy forms from him.

Because the plaintiff failed to respond to the defendants' Motion to Dismiss or for Summary Judgment, he has not provided the Court with anything to refute Ms. Wilson's sworn Declaration. Generally unsworn statements without more are not admissible on summary judgement to contradict sworn affidavits. Edens v. Kennedy, 112 Fed. Appx. 870, 877 (C.A.4(W.Va.), Cir. 2004) citing Scott v. Edinburg, 346 F.3d 752, 759 (7th Cir. 2003) and Provident Life & Accident Ins. Co. V. Goel, 274 F.3d 984, 1000 (5th Cir. 2001). Accordingly, balancing the plaintiff's bald assertion against the sworn declaration, the undersigned gives no credible weight to the same and is of the opinion that the plaintiff should not be excused from the exhaustion requirement, and the complaint should be dismissed for failure to exhaust. However, even if the plaintiff had exhausted his administrative remedies, the complaint is still due to be dismissed.

**B. Grievance Forms**

In his complaint, the plaintiff alleges that he asked defendants Justin McCall, David LeMaster, Melissa Wilson and Jason Dickson, for grievance forms, but they refused to provide them to him. Even if true, this allegation fails to state a claim for relief. Federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. Therefore, claims such as the plaintiff's,

that conduct by BOP employees prevented him from pursuing his complaints through the administrative process, are not appropriate claims in a <u>Bivens</u> action. <u>Adams v. Rice</u>, 40 F.3d 72 (4th Ci`r. 1994); <u>Scible v. Miller</u>, 2007 WL 868618, *3 (N.D.W.Va.)(an inmate does not have a constitutional right to participate in grievance procedures); <u>Williams v. Huffman</u>, 2009 WL 3367062 (W.D.Va.)(Same). Instead, "the legal consequences of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies." <u>Murphy v. Inmate Systems Management, Inc., et al.</u>, 2008 WL 793631 (S.D.W.Va.).

The only claim the plaintiff makes against defendants Justin McCall, David LeMasters, Melissa Wilson, and Jason Dickson, arises from their alleged interference with the administrative remedy program. Therefore, the plaintiff has not alleged any acts taken by these defendants that violated his constitutional rights. Accordingly, each of these defendants must be dismissed from this action.

## C. <u>Access to the Law Library</u>

"The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries, or adequate assistance from prisoners trained in the law." <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977). When alleging denial of access to the courts, a prisoner must make specific allegations and must also identify an actual injury resulting from official conduct. <u>Cochran v. Morris</u>, 72 F.3e 1310 (4th Cir. 1996). "A showing of injury is required in order to avoid adjudication of trivial claims of deprivation." <u>Id</u>. at 1317. Actual injury sufficient to sustain a cause of action for denial of access to the courts is present where, for example, an inmate deprived of legal materials is unable to meet court

imposed deadlines as a result of the deprivation. Roman v. Jeffes, 904 F.2d 192, 198 (3d Cir. 1990). However, "the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the Bounds line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, or habeas petitions. In Wolff v. McDonnell, 418 U.S. 539 (1974), we extended this universe of relevant claims only slightly, to 'civil rights actions' --i.e., actions under § 42 U.S.C. 1983 to vindicate 'basic constitutional rights.'" Lewis v. Casey, 518 U.S. 343, 354 (1996)(citations omitted).

In the instant case, the plaintiff alleges that he had a habeas petition pursuant to 28 U.S.C. § 2255 pending in federal court in Tallahassee, Florida which he could not defend due to the defendants' actions. Although the plaintiff does not provide a case number, a review of PACER indicates that the plaintiff filed a § 2255 Motion to Vacate on September 17, 2012. On that date, he was housed in the SHU. The Motion is eight pages long and references numerous decisions from various circuits. The Magistrate Judge assigned to the case issued a R&R on November 7, 2012, recommending that the Motion be denied. On November 26, 2012, while still housed in the SHU, the plaintiff filed a five page objection, which also included case law. Again, there is no doubt that prisoners must be allowed access to the courts that is "adequate, effective, and meaningful." Bounds at 822. However, to establish a claim for denial of such access, the plaintiff must allege both a denial of court access and some prejudice resulting from the denial of access. Lewis v. Casey, 518 U.S. 343, 351-352 (1996)(finding that a prison inmate retains a right to the courts but must allege that he suffered actual injury as a result of the defendant's actions to establish a constitutional violation). Here, although the plaintiff claims he was unable to defend his case, it is clear that he did,

indeed, "defend" his case. The mere fact that he did not receive a favorable decision does not establish a constitutional violation, and the plaintiff's complaint regarding access to the library fails to state a claim for relief.

## D. <u>Conditions of Confinement</u>

The undersigned has viewed the plaintiff's complaint and amended complaint as stating a claim under the Eighth Amendment which prohibits punishments that "involve the unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976)(*quoting* <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)). Accordingly, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 753 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, <u>Bell v. Wolfish</u>, 441 U.S. 520 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), *quoting* <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard, and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297-99 (1991). To satisfy the objective element of a prison condition claim, the plaintiff must show (1) that he has sustained a serious or significant mental or physical injury as a result of the challenged condition, see <u>Stricklet v. Waters</u>, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); or (2) that the plaintiff's continued, unwilling exposure to the challenged condition creates an unreasonable risk of serious damage to his future health. <u>See</u>

Helling v. McKinney, 509 U.S. 25, 31 (1993). In order to establish the subjective element of deliberate indifference an inmate must show that (1) the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; and (2) the prison official also must have drawn the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).A sufficiently serious deprivation occurs when a "prison official's acts or omission...result in a denial of the minimal civilized measure of life's necessities." Id. at 298. In Farmer, the Supreme Court specifically rejected the notion that the common law definition of "reckless" in civil cases meets the deliberate indifference standard.

In the instant case, the plaintiff alleges that when he arrived in the SHU on July 18, 2012, he was taken to a room with no running water, no sink, no toilet and half a mattress. He also alleges that he was given a bag to use for his bathroom needs, and on one removed the bag for two days. He further alleges that the walls and floors had dried blood and feces on them. He claims that he was held in that cell for two and a half days. (Doc. 8-1, pp. 11-13). However, he does not allege that he suffered a serious or significant physical or mental injury as a result of the time he spent in the holding cell.

The length of confinement under the challenged conditions is also a factor to be considered. Hutto v. Finney, 537 U.S. 678, 686 (1978)(noting that confinement in a "filthy, overcrowded cell and a diet of [1000 calories per day] might be tolerable for a few days and intolerably cruel for weeks or months). In Beveranti v. Smith, 120 F.3d 500, 504-05 & n. 5 (4th Cir. 1997), the Fourth Circuit found that inmates who were held for six months in cells that were hot, flooded with water from a leak in the toilet, infested with vermin, and smeared with urine and feces, did not state an Eighth Amendment claim based on the conditions of their confinement.

The plaintiff was placed in the SHU on July 18, 2012. He acknowledges that he was only in the

holding cell for two and one half days. In addition, he does not claim that the alleged condition of the cell caused him any harm more serious than temporary discomfort, and this discomfort does not rise to the level of a constitutional violation. Discomfort lasting just a few days that does not result in any notable harm cannot form the basis for a constitutional claim. *See* Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).Accordingly, the plaintiff's claim regarding the conditions of the SHU holding cell fail to state a claim upon which relief can be granted.

The plaintiff also alleges that his "right to recreation" was violated from August 29, 2012, to approximately October 1, 2012. He specifically claims that during this period he was locked down for 24 hours a day. (Doc. 8-1, p. 13). With regard to lack of recreation, an inmate must show specific harm resulting from the deprivation and a complete denial for an extended period of time. *Compare* Mitchell v. Rice, 954 F.2d 187, 192 (4th Cir. 1992)(seven months without out-of-cell exercise violated constitutional standards of decency), and Knight v. Armontrout, 878 F.2d 1093, 10-95-96 (8th Cir. 1989)(thirteen days without recreation does not rise to Eighth Amendment violation).

Here, the plaintiff may have been denied out-of-cell recreation for a period slightly more than a month. However, aside from noting that he was denied recreation, the plaintiff makes no allegation that he suffered any harm let alone a specific harm, as a result. Accordingly, the plaintiff's complaint regarding lack of recreation also fails to state a claim for relief.

**E. Racial Discrimination and False Incident Report**

The plaintiff alleges that on July 18, 2012, Justin Tarovisky and Jason Sanders came to his cell and told him and his cell mate to stand up for count. The plaintiff alleges that a verbal exchange ensued in which he was called a nigger and a monkey. He further alleges they falsified a report against him, but gives no further information with respect to the report.

Name-calling alone cannot form the basis of a constitutional violation because a person has no liberty interest at stake. Numerous courts around the country have held that "even the most abusive verbal attacks do not violate the constitution." Oltarzewski v. Rggiero, 830 F.2d 136, 139 (9th Cir. 1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Nor do words or threats amount to assault under 42 U.S.C. §1983. Pierce v. King, 918 F.Supp. 932 (E.D.N.C. 1996), aff'd, 131 F.3d 136 (4th Cir. 1997) cert. granted and judgment vacated on other grounds, 525 U.S. 802 (1998). Likewise racial epithets do not implicate constitutional rights because, "no matter how abhorrent or reprehensible" a racial epithet may be, it cannot itself form the basis of a §1983 claim. See Wade v. Fisk, 176 A.D.2d 1087, 1089, 575 NYS.2d 394, 396 (1991). Defendants Sanders and Tarovisky each deny ever calling the plaintiff a racially offensive name. (Docs. 97-7, 9708). However, even if they had, it would not rise to the level of an actionable constitutional violation.

With respect to the plaintiff's allegations regarding these two defendants falsifying an incident report, as previously noted the plaintiff provide no more than that. The plaintiff provides no information about the charges or the disposition of the allegedly falsified incident report. Conversely, the two defendants involved have provided sworn Declarations that deny falsifying any incident report. Accordingly, the plaintiff's claim regarding an allegedly false incident report fails to state a claim for relief.[4]

---

[4]According to the information in the Declarations, on July 18, 2012, a search was conducted of the plaintiff's cell. During the search, a seven inch piece of metal rod was recovered in the corner of the cell. In addition, a rolled up paper with green leafy substance was found inside the desk, which tested positive for marijuana. Accordingly, Officer Sanders wrote three incident reports for the plaintiff: (1) Possession of any drugs or alcohol Code 113; (2) Threatening another with bodily harm and refusing to obey and order, Code 203 and 307; and (3) Possession, manufacture, or introduction of a weapon, Code 104. In addition, metal from the secured wall locker was manipulated and cut at the ends. Therefore, Officer Tarovisky wrote the plaintiff one incident report

## F. Public Health Service Employees

The plaintiff alleges that in October 2012, he informed Christopher Myers, a physician assistant, that he was having low back pain and right leg pain. The plaintiff further alleges that he complained "the whole month of October, 2012." He also alleges that "on or about November 5th through the 9th 2012" he complained to defendant Meyer regarding ear and tooth pain. (Doc. 8-1, pp. 6-7).The plaintiff also claims that Dr. Gregory Mims and Registered Nurse Devin Kramer were deliberately indifferent to his medical needs.

Defendant Myers has submitted a sworn Declaration in which he states that he started working for the Federal Bureau of Prisons at USP Hazelton in February 2011. On August 3, 2012, he transferred into the United States Public Health Service and remained working at USP Hazelton. (Doc. 97-3). In addition, defendants Mims and Kramer have executed sworn Declarations stating that the were employed by the Public Health Service at all times relevant to the allegations in the plaintiff's complaint. (Docs. 97-4, 97-5).

Title 42 U.S.C. § 233(a) provides that the exclusive civil remedy available to any individual against an employee of the U.S. Public Health Service for any actions pertaining to medical, surgical, dental or related functions, is an action pursuant to the Federal Tort Claims Act (28 U.S.C. § 2672). Section 233 (a)

> protects commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead. The United States thus in effect insures designated public health officials by standing in their place financially when they are sued for the performance of their medical duties.

---

for Destroying, altering or damaging governmental property in violation of Code 218.

Cuoco v. Moritsugu, 222 F.3d 99, 108 (2d Cir. 2000). See also, U.S. v. Smith, 499 U.S. 160, 170 n.11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personnel for alleged malpractice committed within the scope of employment); Carlson v. Green, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C. § 233(a) that the FTCA is a plaintiff's sole remedy against Public Health Service employees); Apple v. Jewish Hosp. And Medical Center, 570 F. Supp. 1320 (E.D.N.Y. 1983) (motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action).  Therefore, pursuant to 42 U.S.C. § 233(a), defendants Myers, Mims and Kramer  enjoy absolute immunity from personal liability for all claims arising from the medical care they provided the plaintiff, and they must be dismissed as  defendants in this action.

**G. Deliberate Indifference to Medical Needs**

To state a claim under the Eighth Amendment, the plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of

mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[5]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

---

[5] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. <u>Wilson</u>, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." <u>Id</u>. at 844.

In his complaint, the plaintiff refers to interactions with Devin Kramer, Dr. Gregory Mims, Christopher Myers, and Dr. Fanning, who the plaintiff refers to as the psychiatrist for USP Hazelton. As previously noted, defendants Myers, Kramer and Mims are employees of the Public Health Service and have absolute immunity. Dr Fanning is not an employee of the Public Health Service. However, the plaintiff's complaint fails to state a claim of deliberate indifference against Dr. Fanning as discussed below.

According to the information provided by Dr. Mims, the plaintiff is currently being treated for Major Depressive Disorder. He was on two antidepressants, bupropion (Wellbutrin) and fluoxetine (Prozac). His buprorion was discontinued on July 30, 2013, after he refused to take it in a crushed form and in a cup of water per protocol. Specifically, the plaintiff smacked the cup off of the food slot and told the nurse: "If you bring that pill back like that again I am going to ****you down." You don't believe me, try it and see what happens, I am going to ****you down. The nurse took this as a refusal

and completed a Medical Treatment Refusal. Dr. Mims then made the decision to discontinue this medication, but continued the fluxetine, That plaintiff has been seen for Chronic Care Visits since his bupropion was discontinued, and he has suffered no adverse medical affects from the discontinuation of this medication. Furthermore, a review of the Bureau's formulary guidelines states that buproprion should be used for the diagnoses of Bipolar Depression and/or ADHD. The plaintiff has no record of either of these diagnoses in his chart. (Doc. 97-5).

Based on these facts, there is no evidence that Dr. Fanning or any other medical personnel were deliberately indifferent to the plaintiff's serious medical needs. He is still receiving medication for his depression and has not suffered any documented ill effects. *See also* Blouir v. Powers, 2009 WL 426279 (D.S.C.)(it was not deliberate indifference to discontinue an inmate's sleep medication based on his failure to properly comply with the instructions).

## H. Sexual Harassment

The plaintiff alleges that on or about 9:30 p.m. on July 18, 2012, unknown prison officials came to his unit and took him to the Lieutenant's office. He further alleges that once he was in the Lieutenant's office, three unknown officers made him strip naked, placed him a holding cell, and conducted a body cavity search. He alleges that offensive remarks were made during this process.

A plaintiff may name "John Doe" as a defendant when the identity of a defendant is unknown. Boyd v. Gullet, 64 F.R.D. 169 (D. Md. 1974). However, a district court is not required "to wait indefinitely" for the plaintiff to provide the defendant's true identity to the Court. Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980).

The plaintiff has had sufficient time to identify all defendants in this action. Moreover, the

plaintiff's allegations regarding these John Doe defendants fails to state a constitutional violation. Again, in order to state a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a human need; and (2) deliberate indifference to prison conditions on the part of prison officials.

The Eighth Amendment protects against cruel and unusual punishment, and an alleged sexual assault, if proven, would violate the Eighth Amendment. However, the plaintiff does not alleges that he was sexually assaulted, he alleges sexual harassment. Under the Eighth Amendment, the alleged conduct of the unknown officers does not rise to the level of a serious deprivation of a basic human need or the unnecessary and infliction of pain. In addition, the Eighth Amendment stands as the primary constitutional limitation associated with a prisoner's bodily integrity. *See, e.g.,* Hudson v. Palmer, 468 U.S. 517, 527-68, 530 (1984). ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order...The Eighth Amendment always stands as a protection against 'cruel and unusual punishment' including calculated harassment unrelated to prison needs.") Nonetheless, some circuit courts, including the Fourth Circuit, have held that the Fourth Amendment encompasses a very narrow right to bodily privacy in prison. Lee v. Downs, 641 F.2d 1117, 1119-21 (4th Cir. 1981) )"Most people...have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.").

In the instant case, the plaintiff has made no allegation that any of the unknown officers involved in the cavity search was female. Moreover, the plaintiff alleges that the search was conducted in a

holding cell, and he makes no allegations that the search could be seen by officers not directly involved. Therefore, the plaintiff's allegations regarding the John Does should be dismissed for failure to state a claim upon which relief can be granted.

## VI.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that  the defendants' Motion to Dismiss or for summary judgment (Doc. 96) be **GRANTED**, and the plaintiff's complaint be **DISMISSED with PREJUDICE.**

Within fourteen  (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.   A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of  of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.  The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United

States District Court for the Northern District of West Virginia.

DATED: May 19, 2014

*John S. Kaull*
JOHN S.  KAULL
UNITED STATES MAGISTRATE JUDGE