```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**ANTHONY WILLIAMS,**

    **Plaintiff,**

**v.** // **CIVIL ACTION NO. 1:12CV174**
                                       (Judge Keeley)

**TERRY O'BRIEN, Warden,**
**ODOM, Associate Warden,**
**B. GILMORE, Captain,**
**D. HUFF, Lieutenant,**
**SPOLAN, Lieutenant,**
**DR. FANNING,**
**GREGORY MIMS, Clinical Director,**
**CHRISTOPHER MYER, P.A.,**
**DEVIN KRAMER, R.N.,**
**WILSON, Unit Counselor,**
**DIXON, Case Manager,**
**LeMASTER, Unit A-1 Manager,**
**NEWSOME, Correctional Officer,**
**J. SANDERS, Correctional Officer,**
**J. TAROVISKY, Correctional Officer,**
**SQUIRES, Lieutenant,**
**JOHN DOES, several unknown staff members,**

    **Defendants.**

## ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 108]

On November 16, 2012, the pro se plaintiff, Anthony Williams ("Williams"), filed a civil action with the Court pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging the violation of his constitutional rights while incarcerated at United States Penitentiary Hazelton ("USP Hazelton"). In the complaint, Williams makes multiple allegations against 17 defendants. The Court referred this matter to United States Magistrate Judge John S.

Kaull for initial screening and a Report and Recommendation ("R&R") in accordance with LR PL P 2.

On November 27, 2013, the defendants filed a motion to dismiss, or in the alternative, motion for summary judgment. (Dkt. No. 96). Thereafter, on December 19, 2013, Williams filed a motion for enlargement of time, which the court granted, allowing Williams to respond by February 3, 2014. Williams, however, not only failed to respond by the Court's deadline, he failed to respond at all.

On May 19, 2014, Magistrate Judge Kaull issued an R&R, recommending that the defendants' motion to dismiss or for summary judgment be granted, and that Williams's complaint be dismissed with prejudice. (Dkt. No. 108). As an initial matter, the magistrate judge determined that Williams had failed to exhaust his administrative remedies. "[F]ederal prisoners suing under Bivens . . . must first exhaust inmate grievance procedures." See Porter v. Nussle, 534 U.S. 516, 524 (2002). The holding in Porter finds its basis in 42 U.S.C. § 1997e(a) where Congress provided that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." Because Williams failed to exhaust the administrative remedies at his disposal, his complaint is poised for dismissal.

In his first substantive claim, Williams contends that staff at USP Hazelton refused to provide grievance forms to him. However, Melissa Wilson, one of Hazelton's correctional counselors, swore under oath that she "provided [administrative remedy] forms to [Williams]." (Dkt. No. 98-4 at 1). Moreover, the magistrate judge found that prisoners have no constitutional right to participate in a prison's grievance process. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, Williams's claim -- even if true -- fails to allege a constitutional injury.

In his second claim, Williams maintains that prison staff denied his access to the prison's law library, which worked to impair his defense of an ongoing habeas corpus petition in a separate proceeding. The magistrate judge found that Williams did not suffer an "actual injury resulting from official conduct" because he was, in actuality, able to litigate the petition. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(citing Strickler v. Waters, 989 F.2d 1375, 1382–85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993)).

With respect to his third claim, Williams argues that the conditions of his confinement give rise to a constitutional injury under the Eighth Amendment. However, the magistrate judge found that the conditions in the Special Housing Unit did not constitute a "sufficiently serious" deprivation and amounted only to temporary discomfort. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Moreover,

the mere existence of such conditions does not provide an independent basis for a constitutional claim.

In his fourth claim, Williams alleges that staff at USP Hazelton violated his "right to recreation." (Dkt. No. 1 at 13). Upon review, the magistrate judge found that inmates must show that specific harm resulted from a lack of recreation. Further, courts generally defer to the expertise of the Federal Bureau of Prisons –- particularly when a prison has a "penological justification" for restricting recreation. See Mitchell v. Rice, 954 F.2d 187, 192 (4th Cir. 1992). In this case, the magistrate judge determined that Williams failed to establish specific harm. Furthermore, USP Hazelton "was on 'lockdown' during the timeframe in question" (Dkt. No. 97 at 13), and "internal [prison] security . . . [is] perhaps the most legitimate of penological goals." Overton v. Bazzetta, 539 U.S. 126, 133 (2003). Accordingly, the staff at USP Hazelton was justified in its restriction of Williams's recreation time during a prison-wide lockdown, and a constitutional claim does not lie.

In his fifth substantive claim, Williams contends that he was the subject of racial epithets and a false incident report initiated by two Hazelton guards. Upon review, the magistrate judge found that racial epithets do not provide the footing for a Bivens claim. Further, with respect to the false incident report, Williams provided only bald assertions in his complaint in contrast to the defendants' "sworn Declarations that deny falsifying any incident

4

report." (Dkt. No. 108 at 16). Because Williams failed to counter the sworn statements with his own evidence, the magistrate judge found he failed to state a claim for relief on the false incident count.

In his sixth claim, Williams argues that a number of medical personnel were deliberately indifferent to his healthcare needs. On this point, the magistrate judge found that -- pursuant to 42 U.S.C. § 233(a) -- several of the defendants are entitled to absolute immunity from Williams's Bivens action.

However, the magistrate judge also found that Dr. Fanning (identified by Williams as the prison's psychologist) is not entitled to absolute immunity under § 233(a). In the complaint, Williams alleges that Dr. Fanning conspired with other defendants to prevent Williams from receiving a particular medication.

Nevertheless, the magistrate judge's review revealed that the complaint fails to state a claim against Dr. Fanning. To state a claim under the Eighth Amendment, a prisoner must prove that the deprivation of medical care was of a "sufficiently serious" character. Wilson, 501 U.S. at 298. Here, Defendant Gregory Mims -- the Clinical Director at Hazelton -- declared under oath that Williams's medication "was discontinued on July 30, 2012, after [Williams] refused to take it in a crushed state and in a cup of water per protocol." (Dkt. No. 97-5 at 1). Subsequent checkups confirmed that Williams "has suffered no adverse medical affects

from the discontinuation of this medication." Id. at 2. Because the cessation of Williams's medication did not result in any complications or adverse effects, he cannot establish that the deprivation of medical care was "sufficiently serious" within the meaning of Wilson.

In addition, at least one other federal district court within the Fourth Circuit has found that a plaintiff did not make out a claim for deliberate indifference when he failed "to properly comply with the medication." Blouir v. Powers, No. 4:07-3103, 2009 WL 426279, at *5 (D.S.C., Feb. 19, 2009). Like the plaintiff's claim in Powers, Williams's deliberate indifference claim fails because Williams did not take his medication according to protocol.

In his seventh and final claim, Williams contends that several unknown prison officials ("John Does") sexually harassed him in a lieutenant's office. However, the magistrate judge's review of the complaint determined that the alleged sexual harassment was actually a body cavity search. Such searches are governed generally by the Fourth Amendment, and more specifically by the factors set forth in Bell v. Wolfish, 441 U.S. 520 (1979). "Pursuant to Bell, we examine the search in its complete context and consider the following factors: 1) the place in which the search was conducted; 2) the scope of the particular intrusion; 3) the manner in which the search was conducted; and 4) the justification for initiating

the search." United States v. Edwards, 666 F.3d 877, 883 (4th Cir. 2011).

The search in the present case was allegedly conducted in a lieutenant's office, which would tend to afford Williams "a right of privacy." Hudson v. Palmer, 468 U.S. 517, 527 (1984)(holding that inmates do not retain "a right of privacy in their cells."). As to the scope and manner of the search, Williams describes a strip search that could not be seen by other penological officers. That is to say that only those officers directly involved in the search viewed Williams's person. More particularly, no female officers viewed the body cavity search. These facts tend to suggest that the scope and manner of the strip search was reasonable -- falling well within the bounds of the Fourth Amendment.

The only Bell factor that tends to weigh in favor of Williams is "the justification for initiating the search." Edwards, 666 F.3d at 883. In his complaint, Williams makes several references to the staff's justification for initiating the search. For example, as the search concluded, the lieutenant allegedly said, "This is what you get for threatening [my] staff." (Dkt. No. 1 at 11). Some months later, a correctional officer known as J. Tarovisky -- alluding to the search -- allegedly stated, "I told you we would get you." Id. at 12. However, Williams failed to support the allegations in the complaint with sworn statements or other evidence. Moreover, Williams failed to serve the John Does or the

United States Attorney in accordance with Fed. R. Civ. P. 4(e). Because of the substantive and procedural defects, Williams has failed to make out a claim for sexual harassment against the John Does.

The R&R also warned Williams that his failure to object to the recommendation would result in the waiver of any appellate rights he might otherwise have on the issues. The parties did not file any objections.[1] Consequently, finding no clear error, the Court **ADOPTS** the R&R in its entirety, **GRANTS** the defendants' motion to dismiss, **DISMISSES** Williams's complaint **WITH PREJUDICE**, and **ORDERS** that this case be stricken from the Court's docket.

It is so **ORDERED.**

The Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of both orders to counsel of record and to the pro se plaintiff, certified mail, return receipt requested.

DATED: June 24, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

---

[1] The failure to object to the R&R not only waives the appellate rights in this matter, but also relieves the Court of any obligation to conduct a de novo review of the issues presented. See Thomas v. Arn, 474 U.S. 140, 148-153 (1985); Wells v. Shriners Hosp., 109 F.3d 198, 199-200 (4th Cir. 1997).